**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDWARD BUKSTEL                          *
                                        *
Plaintiff                               *          CIVIL ACTION NO.
                                        *
           v.                           *
                                        *
DEALFLOW MEDIA, INC.                    *
STEVEN DRESNER                          *
ADAM STEINHAUER and                     *
WILLIAM MEAGHER                         *
                                        *
Defendants                              *

## COMPLAINT

Plaintiff, Edward Bukstel, through his undersigned counsel, hereby complains as follows:

## THE PARTIES

1.      Edward Bukstel (hereinafter "Plaintiff") is an adult individual with a primary business address of 34 E. Germantown Pike, No. 167, Norristown, Montgomery County, Pennsylvania 19401.

2.      At all times material hereto, Defendant, DealFlow Media, Inc. (hereinafter "DealFlow Media") was a New York corporation with a principal office located at 88 Froehlich Farm Boulevard, Suite 206, Woodbury, New York 11797.  DealFlow Media also maintained a west coast office located at 1435 N. McDowell Boulevard, Suite 120, Petaluma, California 94954.

3.      At all times material hereto, Defendant, Steven Dresner (hereinafter "Defendant Dresner") was the CEO of DealFlow Media, is a California resident and has/had a principal place of business located at 1435 N. McDowell Boulevard, Suite 120, Petaluma, California 94954.

4.      At all times material hereto, Defendant, Adam Steinhauer (hereinafter "Defendant Steinhauer") was the Editor-in-Chief of DealFlow Media, is a California resident and has/had a principal place of business located at 1435 N. McDowell Boulevard, Suite 120, Petaluma, California 94954.

5.      At all times material hereto, Defendant, William Meagher (hereinafter "Defendant Meagher") was a journalist working for DealFlow Media, is a California resident and has/had a principal place of business at 1435 N. McDowell Boulevard, Suite 120, Petaluma, California 94954.

## JURISDICTION AND VENUE

6.      Jurisdiction lies in this Court pursuant to 28 U.S.C. §1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

7.      Because a substantial part of the events giving rise to this action occurred in one or more counties in the Eastern District of Pennsylvania, this action properly lies in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND

8.      Plaintiff is the CEO and majority shareholder of the publicly traded company, VitaminSpice, Inc. (hereinafter "VitaminSpice").

9.      Plaintiff's career as a business owner and corporate officer is highly dependent upon his reputation within his industry and the community at large.

10.     As the CEO of VitaminSpice, Plaintiff's professional reputation is essential to maintaining the confidence and morale of his fellow corporate officer, directors, employees and shareholders.

11.     Furthermore, Plaintiff's professional reputation is highly important to potential investors and future shareholders who rely heavily upon the business acumen of a company's corporate officers in making a decision to invest.

12.     Prior to March 4, 2013, Plaintiff's professional reputation was stellar.  He was well-respected in his industry and was generally held in high regard.  By way of example and not limitation, he has more than eighteen (18) years of experience in data integration, data security and communications.  Plaintiff founded the Freedom Calls Foundation which provided free communications for troops in Iraq.  He was nominated for the Zachary and Elizabeth Fisher Humanitarian Award, the highest civilian honor awarded by the Department of Defense.  Plaintiff has been a national speaker on electronic data interchange and has been a guest lecturer at The Wharton Business School.  He holds a Bachelor of Sciences degree from Muhlenberg College and has completed PhD graduate coursework in Molecular Biology at Temple University.

13.     At all times material hereto, DealFlow Media was an international company that provided several finance/business-oriented services including independent research and analysis for finance professionals.  DealFlow Media also published the *The DealFlow Report*, an online weekly periodical that was disseminated to tens of thousands of individuals and institutions who, like Plaintiff, are in the field of business and finance.  According to DealFlow Media's website, "[o]ver 6,000 institutions rely on DealFlow Media for accurate, comprehensive and timely information about niche areas of finance.  The company's clients include investment managers, banks, public and private corporations, hedge funds, law firms, and financial companies worldwide."

14.     During the beginning of 2013 and up until March 4, 2013, Plaintiff, on behalf of himself and VitaminSpice, negotiated an asset purchase worth approximately $8,000,000.00. The transaction would have involved the purchase of VitaminSpice assets by a bona fide investor from New York who had expressed great interest in making the deal.

15.     In its March 4, 2013 issue of The DealFlow Report, DealFlow Media, individually, jointly and by and through Defendants Dresner, Steinhauer and/or Meagher, published an article (hereinafter the "Article") about Plaintiff, which article was patently false, libelous and highly defamatory.

16.     The Article appeared on page one (1) of the March 4, 2013 issue of The DealFlow Report and was the major headline of the edition.  The Article's title appeared in bold and enlarged font, making it the most conspicuous text on the page so that every reader would be drawn to it, which was the clear intent of the Defendants.

17.     The Article's title was "**VITAMINSPICE CEO SAYS HE REQUESTED TRADING HALT AMID DISPUTE OVER STOCK MANIPULATION**."     (A true and correct copy of the Article is attached hereto as Exhibit A).

18.     The first line of the Article read as follows:

"The chief executive of the microcap company VitaminSpice, Inc. (VTMS) says that he asked the Securities and Exchange Commission to issue an order halting trading in the company's stock, amid a dispute with his former attorney who he accuses of stock manipulation." *See* Exhibit A.

19.     Plaintiff never requested a trading halt on VitaminSpice stock.

20.     Plaintiff never told any of the Defendants that he requested a trading halt on VitaminSpice stock.

21.     Plaintiff never asked the Securities and Exchange Commission to issue an order halting trading of the company's stock.

22.     The title and content of the Article were deliberately falsified by the Defendants to sensationalize the story for the benefit of its readership and with total disregard for the Plaintiff and the harm that the false statements would cause him.

23.     Plaintiff learned about the Article on March 4, 2013 and immediately contacted the Defendants.  He immediately informed them that the Article title and content were false, that he was engaged in a deal worth approximately $8,000,000.00, which deal was jeopardized by the defamatory publication, and that VitaminSpice investors were contacting him with concerns over the headline and content.  Plaintiff requested that the Defendants immediately issue a press release with a retraction and apology to restore investor confidence and to salvage the asset purchase.

24.     The Defendants acknowledged the falsity of the tile and opening line but simply ignored Plaintiff's request for a press release containing a retraction and apology.  Instead, the Defendants changed the title to "VitaminSpice Halted Amid Dispute Between CEO, Attorney Over Stock Manipulation" and the opening line to "The chief executive of the microcap company VitaminSpice Inc. (VTMS) says that he provided a document to the Securities and Exchange Commission . . ."  However, the changes to the title and opening line were made ***only*** to online versions of the Article and were not made until after the March 4, 2013 edition had been fully disseminated in PDF format to the many thousands of individuals and institutions who subscribe to the DealFlow Report.  The Defendants never issued a press release, never retracted the statement and never apologized to Plaintiff.

## COUNT I – DEFAMATION (LIBEL)

25.     Plaintiff hereby incorporates all prior paragraphs as if same were set forth fully at length herein.

26.     The Defendants, individually and/or jointly, while acting with negligence, recklessness and/or intent, did publish and/or cause to be published, defamatory and libelous statements regarding Plaintiff.

27.     The defamatory and libelous statements that were published by the Defendants were intended to harm, or tended to harm, Plaintiff's well-being and reputation in the community.

28.     The defamatory and libelous meaning of the published information is self-evident to the recipient of the information because the information consists of false accusations that Plaintiff, without the authority or any reasonable inclination to do so, ordered the SEC to halt trading of VitaminSpice stock.

29.     The Defendants, with reckless disregard to Plaintiff's good name and reputation, published the defamatory information for the purpose of sensationalizing an otherwise innocuous news story for their own pecuniary interests (*i.e.*, to increase interest in and subscriptions to the *DealFlow Report*).

30.     In addition to causing Plaintiff humiliation, embarrassment, reputational damage and emotional distress, Plaintiff lost the opportunity to perfect a sale of VitaminSpice assets, a business deal that was worth approximately $8,000,000.00.

31.     Defendants' publication of defamatory information caused skepticism amongst current and potential VitaminSpice investors who were caused to believe that Plaintiff's business

judgment was seriously impaired because the CEO of a publicly traded company would not and could not order the SEC to issue a trading halt on company shares.

32.     The defamatory information published by Defendants caused Plaintiff to appear in dereliction of his fiduciary duty to VitaminSpice, thereby damaging employee and shareholder confidence and company morale, all to Plaintiff's great detriment.

33.     The information that Defendants improperly created, printed,  transmitted, circulated and published consists of the aforementioned Article, its title and contents.  Namely, "VITAMINSPICE CEO SAYS HE REQUESTED TRADING HALT AMID DISPUTE OVER STOCK MANIPULATION," which is the Article's title, and, "The chief executive of the microcap company VitaminSpice, Inc. (VTMS) says that he asked the Securities and Exchange Commission to issue an order halting trading in the company's stock, amid a dispute with his former attorney who he accuses of stock manipulation." *See* Exhibit A

34.     At all times material hereto, the libelous statements and defamatory information obviously pertained to Plaintiff, because he is the CEO of VitaminSpice, a publicly traded corporation, and he is specifically identified by name as the CEO of VitaminSpice in the Article.

35.     At all times material hereto, the Defendants acted negligently, recklessly, intentionally and/or with malice.

36.     As a result of the libelous and/or defamatory communications, Plaintiff has suffered severe reputational and financial harm, has been lowered in the estimation of the community and lost the opportunity to participate in a sale of VitaminSpice assets, which business deal was worth in excess of $8,000,000.00.

37.     Each of the Defendants acted to perpetuate the defamatory and libelous conduct against Plaintiff by causing publication, transmission, and dissemination of the defamatory

information to the Defendants' international subscribership, many, if not all of whom, are directly involved in Plaintiff's industry.

38.     Each of the Defendants, by their conduct, have placed themselves in the chain of publication and are each and every one of them jointly, individually and separately liable for any and all damages caused thereby.

39.     At one or more times material hereto, Defendants Dresner, Steinhauer and Meagher did each act individually and outside the scope of their employment with DealFlow Media, each having acted to intentionally harm Plaintiff by defaming his character and reputation.

40.     At all times material hereto, all of the Defendants acted without justification, privilege or excuse in defaming and libeling Plaintiff.

41.     The Defendants' actions of libeling Plaintiff constitute defamation, *per se*.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in his favor and against the Defendants in an amount in excess of $75,000.00, plus attorneys' fees, punitive damages, costs of suit and such other amount that this Honorable Court deems just and appropriate under the circumstances.

## COUNT II – INTENTIONAL INTERFERENCE
## WITH CONTRACTUAL RELATIONS

42.     Plaintiff hereby incorporates all prior paragraphs as if same were set forth fully at length herein.

43.     At the time that Defendants published the defamatory Article referenced above, Plaintiff, on behalf of his company, VitaminSpice, was engaged in negotiations with a bona fide New York investor, with respect to a purchase of VitaminSpice assets worth in excess of

$8,000,000.00.  Prior to Defendants' publication of the Article, the deal between VitaminSpice and the investor was likely to consummate.

44.     Immediately upon learning of the defamatory content of the Article, Plaintiff notified all of the Defendants that the defamatory publication was jeopardizing the asset purchase.  Plaintiff requested that the Defendants immediately issue a press release, retraction and public apology in hopes of salvaging the deal.  Time was of the essence because the parties were close to preparing written terms.  The Defendants, in callous disregard to Plaintiff's situation, simply ignored his reasonable requests.  The asset purchase ultimately fell through with no prospective similar deal having materialized to date.

45.     Defendants' complete disregard to Plaintiff's requests (*i.e.*, their refusal to issue a timely press release, retraction and apology) clearly establishes that the Defendants purposefully and intended that Plaintiff be harmed by the continued publication of the defamatory Article.

46.     At all times material hereto, the Defendants acted without privilege or justification in harming and/or attempting to harm Plaintiff's prospective business.

47.     As a result of Defendants' interference with Plaintiff's contractual relations, Plaintiff was caused to suffer actual legal harm which is severe, substantial and continuing.

48.     At all times material hereto, Defendants Dresner, Steinhauer and Meagher, while acting outside of the scope of their duties as officers and/or employees of DealFlow Media, did purposefully act with the intent to harm the existing business relations between Plaintiff and the bona fide purchaser.  To wit, each individual Defendant, despite knowing that the Article was false and defamatory and despite knowing that a potential business deal was at stake, refused to timely retract the article, issue a press release or take any swift action whatsoever to mitigate the damages to Plaintiff.

49.     At all times material hereto, Defendants Dresner, Steinhauer and Meagher acted without privilege or justification in harming and/or attempting to harm Plaintiff's prospective business relationship with the New York investor.

WHEREFORE, Plaintiff respectfully request that this Honorable Court find in his favor and against the Defendants in an amount in excess of $75,000.00, plus attorneys' fees, punitive damages, costs of suit and such other amount that this Honorable Court deems just and appropriate under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of any issue triable of right by jury in this action, including, but not necessarily limited to, the claims asserted in the Complaint.

Respectfully submitted,

ANDRIS LAW, LLC

/s/ Brian M. Andris_____
BRIAN M. ANDRIS, ESQUIRE
(Pa. Bar No. 93544)
andrislaw@gmail.com
P.O. BOX 22477
PHILADELPHIA, PA 19110
(610)-585-1256 (P)
(215)-525-9681 (F)
ATTORNEY FOR PLAINTIFF,
EDWARD BUKSTEL

Date:  June 12, 2013